to U.S. Fish and Wildlife. Payment of restitution as a condition of supervision is limited amount to losses caused by the specific conduct that is the basis of the offense of conviction. We go back to Huey v. United States which I heard earlier today. That said that under the... Do you agree that the district court and that the resentencing you're urging would have discretion to reconsider the I think he said that there was no fine and for good reason. Yeah because he ordered he ordered what would be the full fine as restitution in my take on this case. I think under Bertucci the record is as it stands. I think that the court made a finding. Resentencing is resentencing right? Well I think that he would be precluded from reconsidering the fine? I believe so. Pardon? I believe so your honor. Under what case? Bertucci said that that you you use the record as it stands on the restitution. I think the record would change. The sentence would change. Well he made a the judge made a finding that my there would be no fine in the case. Then he's unable to pay the restitution and why are we here? In part because my clients can't pay the restitution but but he ordered the restitution because the judge felt it was appropriate. We don't feel it was appropriate which is why we appealed the case. The judge could have ordered a fine certainly. My client received six months in custody for the sale of I understand that you you don't agree with what the district court does. I'm sorry did in this case to calculate the the restitution amount. You've gone all the way to a hundred and thirty. Isn't that coming close to sort of what the district court expressly said we shouldn't be doing which is going to the illegal market price? The hundred thirty dollars was based on the sale price. In other words that was what US Fish and Wildlife was out of pocket in buying the eagle feathers and make no mistake the government still has the eagle feathers. Right but but I would I guess I'm thinking I understand where the money came from. It came from the government coffer to to conduct this this buy but I I guess I was assuming that because that was the price that was negotiated between your client and the agent or the undercover person that's the that's the undercover market for it. That's the I think we could market I think we could certainly make that argument and there was testimony during the sentencing hearing which indicate that for instance a pair of eagle wings, eagle parts was worth about five hundred dollars and an eagle tail was worth anywhere from three hundred to six hundred dollars. This was individual feathers that were sold. That would be a good indication of what the market value is but I think the important part is that the loss to the government which is what restitution really is, is the hundred thirty dollars that they paid out of pocket. There is no loss of a bird in this case. So regardless of what the market value is the loss to the government the act and under US versus Frazier 8th Circuit said that the restitution cannot exceed the actual provable loss realized by the victim. But so so your theory is that the government's the victim does is that I think there seems to be some debate anyway on how you classify the independent of your other argument about where the money should go but is the government the victim here? Is the eagle the victim? Is society the victim? How do we define that? The eagle in this case certainly was not the victim at least in part because my client never killed an eagle and we don't know how the eagle died. The eagle could have died of anthropogenic causes not related to anyone shooting. You're talking about an offense that encompassed 63 feathers aren't we? Yes. Well just you can't just talk about the four feathers that were the focus of this the opinion that there are four feathers came from one juvenile bird that was not the scope of the offense. No the scope of the offense was sale of eagle feathers. The offense was trafficking. Yes exactly. The offense was not taking a bird. The offense was not killing a bird so I can't see it out the window. The offense was the trafficking. So that the loss isn't the loss of a bird it's the loss of the $130 that was paid. I take the government's theory to be that your man was facilitating a market in feathers and that in conjunction with I suppose other people in such a market causes ultimately the death of birds. That's certainly a possibility. I don't know that that's true but that's a good argument. The point is... Well if that's a good argument why doesn't why shouldn't we affirm? That's their theory as to why the value of the bird is the right amount. Because your honor that there that goes to punishment and not to not to the amount of restitution in the case. So that for instance in U.S. versus I'm sorry. Because it's not economic loss. That's correct. That's all restitution under the case law is about. Exactly. Cases which prove a proprietary interest. Because the trafficking's impact on the regulatory interest of the government victim would clearly in my view support the fine. I 100% agree with that which was why it goes to punishment. Which is why I'm reminding I think I think it's a reminder. I don't I think your answer that it wouldn't it your 100% agreement that it goes to fine might not help you on remand. I think the judge is finding however that my client is indigent and... That's a different issue. Okay well. He's made that indigent though he should what would be the basis for restitution then? I mean you didn't appeal the restitution on the grounds of indigence. I did not. Isn't that also a factor on restitution or am I misremembering the statute? Under the Mandatory Victims Restitution Act. This wasn't under the Mandatory. This was a supervised release condition. Right but but the limits are still the same. The point is that that restitution is ordered in cases. I would point out that the U.S. versus Hess case had to do which the government cited had to do with a rhinoceros horn. The issue there was about the length of the sentence. He didn't he wasn't required to pay restitution for raising a rhinoceros just like my client shouldn't be able to pay restitution for for hacking a bird or raising a bird to wild. The the issue there was the length of the sentence. And my client got six months in custody which the court determined to be an appropriate sentence. The sentence we haven't appealed. Neither has the government. The sentence stands. That includes the fine. That includes the there is no question that he ordered restitution as opposed to. Oh I think the sentencing packaging doctrine now does come into play. In an unusual way. The court has determined the sentence. If we say part of the sentence was inappropriate then and it's a remand for resentencing. Then the court has discretion to interrelated interdependent parts of the sentence need to be revisited. I would argue that the sentence is. That's Green and other cases. I would argue that that that the only thing that's been appealed here is the award of restitution and in other cases this court has certainly simply addressed that when it's when it's addressed cases. And those are the would be such as the cases of Reynolds or Howard or those cases. I think this there's a good point made that that in determining the victim that the government having a proprietary interest in fish and game is what determines restitution. The amount of restitution is the value of the wildlife or the amount the government could have sold the wildlife for. But in this case even if the government can get the feathers through forfeiture that's moot because the government actually got the feathers. It can't sell the feathers. So again there's no loss to the government. There's no taking of a bird. I think the government's argued that it could get the if the full bird were found live or dead it could get that by forfeiture. I'm sure it could. Except it's trying it's trying to leverage it's it's forfeiture power into loss. I think it's trying to leverage its forfeiture power into a loss that wasn't shown in this case and that my client didn't plead guilty to. The loss of a wild bird which we just don't have in this case. There was no taking of a bird. The government has the feathers. Government can't sell the feathers and it's only loss is the $130 it paid for the feathers which it still has. I'd like to reserve the rest of my time if I may. Thank you. Thank you. Mr. Parsons. Thank you your honor. May it please the court and Mr. Turner. This appeal stems from one of the largest wildlife trafficking investigations in recent history. I'm going to start. My concern with this case is what I might call a broad good government concern. Would the government's interest, the government is the only victim here identifiable. Would the government's interest in protecting birds justify a $5,000 fine for this defendant's trafficking? Yes, I believe it does your honor. Now if, but then the dollars don't enhance fish and wildlife do they? They go into the general treasury. No, that's not true your honor actually. Where would they go that's different than where this restitution would go? Congress has set up an organization called the National Fish and Wildlife Foundation. And the U.S. Fish and Wildlife Service has a memorandum agreement with that foundation that created an escrow account called the Dakota Eagle Restitution Fund and all funds from these trafficking cases. Would a criminal fine for violating this statute be directed to that, to fish and wildlife and then to that fund? I don't, I'm not certain if a criminal fine would. My question is because restitution would. Fish and wildlife by moving the money from fine to restitution is what I consider a fairly artificial economic loss argument. It manages to enhance its budget right? It's increasing without increasing its appropriations it's increasing its money. Well it's certainly not the intent. And it doesn't go into the budget. Okay, so I, and then and then it's allowing to, then it's giving money to a foundation. It's directing it to the congressionally chartered foundation, correct. Money that if properly assessed in a punishment sense was in a criminal fine would not be available first to the client first to Fish and Wildlife's budget and then to Fish and Wildlife's ability to donate. And I don't know the problem I have with this case because I think your argument that this is economic loss with respect, because there's no dead bird I think it's totally fictitious so why shouldn't we require this the punishment to be done the right way? Well of course we did ask for a fine as well. That was not granted. We asked for both in this case. Restitution was granted They're more readily collectible aren't they? You suffer worse for not paying a fine so to speak. Part of this operation was also crafted in general to address this court's concerns in the Bertucci case. In Bertucci the restitution was the court found was kind of a disguised fine. It really was restitution but it was called a fine but the court held it really was restitution and it wasn't statutorily authorized as part of the sentence. So that was one reason that Bertucci was reversed. Here we followed Bertucci and used the supervised release as the form for the authorization for imposing restitution. But more importantly in Bertucci this court acknowledged that there is a loss caused by the trafficking of a bald eagle in particular and it disagreed with the valuation. There wasn't sufficient evidence documenting what the valuation of an eagle is. In Bertucci though there was an eagle that had died correct? It was linked to the defendant? They had proof of a full killing of an eagle. At least in terms of the factual backdrop we've got a different situation here. We do. It's a slightly different situation but what we do have is genetic DNA proof that at least these four tail feathers came from one dead, the same dead bald eagle. And so a bald eagle was in the stream of trafficking here without question. Could you tell why the eagle died? No. We couldn't tell why the eagle died. There's some testimony at the hearing and in the PSR that he had access to a bald eagle through a buddy, a full bald eagle and he wanted to trade it for marijuana. But the convicted counts were the trafficking of a bald eagle in parts through the sale of these feathers. But I don't think there's really any question under this court's precedence and precedence of many courts that the United States, as the court found here, the people of the United States can be a victim in a wildlife trafficking case. So you don't think there's a requirement of economic loss to the government? Well, property loss. And then the question is so how do you value the property interest of the property interest? I don't understand that other than the theoretical ability to forfeit. It's a bald eagle was lost as the result of this. And the cases involving the lobsters in South Africa, the striped bass, deer, there are plenty of cases that recognize an animal can be a property loss for restitution, including of this court. Not to push it too far, and I don't mean to be fanciful, but we really don't know an eagle can die of natural causes that's a loss, but that's a natural loss. So how can we know that this was an unnatural loss that should be the source of the restitution? It doesn't have to be unnatural loss for an eagle to have been trafficked, and for the feathers to come from an eagle that was trafficked. It could be a natural death. He's not charged with the killing, he's charged with trafficking. How would the government have been deprived of either a property interest or a proprietary interest in the eagle if this trafficking didn't cause the death of an eagle? Well, the eagle, if an eagle is found, it's sent to the Colorado Repository. I mean, it's taken from the wild. Does a citizen have an obligation to turn it in? Actually, yes, to report it. Report it? Yeah. I thought I recalled from a case many years ago that this statute prohibits even picking up the feathers of an eagle that died naturally. If you find in a field or stream. I think that's right. You're supposed to call fish and wildlife. We're talking about something a lot more or less, what seems less offensive, if you will, than killing birds to sell the feathers. He may have well been shooting the bird with a shotgun. We just don't know. I want to be clear. But let me take a stab at my theory here. The government's theory. I think it's true we have lots of case law supporting for the fact that when you traffic wildlife the loss of that wildlife, as the court found here specifically, is a loss to the people, to the United States. If you accept that premise, as Judge Loken in your Chalupnik case, BMG was the mail order distributor of those CDs and DVDs. The court found readily that BMG was a victim in that case. I would say it's clear the United States was a victim in this case. So the question really becomes, so how do you prove the amount of the loss? Not in a proprietary sense. In a governmental sense. In a governmental sense, in a property sense, the way people of the United States own the lands, own the fish, own the wildlife. You can't take that too far. Not too far, but at least as far as this court's precedence have in like Ohlenschlager, where there was a property interest in eggs that were trafficked. This room owned the elk wandering in. Well, the United States does on behalf of the people. And that is what the court found here. Pets too? No. This doesn't carry very far. This court has affirmed cases involving trafficking of wildlife and being a loss to a particular governmental entity. And other courts have too. So if you accept that, then what about causation? Well, go ahead. Go ahead with your theory. Even if you assume the loss is four juvenile bald eagle tail feathers that absolutely mean that eagle is dead. How do you replace those? How do you determine the replacement cost? And that's where cases like Frazier and like even the Supreme Court's most recent decision in Paroline, sometimes you have to give a little leeway in how you value the loss. And when you can't determine an actual fair market value of something, of property or of something that was lost, you can't determine it through fair market value. This court says, and the Supreme Court says, that what you do is come up with some reasonable way to estimate the value. And a good way is replacement cost. This court found the district court that replacement cost here was the proper way, the only way you could replace these four bald eagle feathers, even if it's just the feathers that came from a bald eagle, the only way to replace them is through the introduction of a new bald eagle into the wild. Without any proof of causation? Well, the causation is, does rely, you know, reading this case, it's a fascinating area because causation, if you're talking about strict but-for causation, factual causation, there's no doubt that the feathers, the sale of the feathers itself, happened after the eagle died. So there's no way that the sale of the feathers itself caused the death of an eagle. I can concede that. But what here, when the offense is the trafficking of a bald eagle and its parts, and the trafficking of a, you know, two counts, the trafficking, as the district court found, and it was on in its findings, that it provided the incentive for these traffickers to collect all these various feathers and bald eagles, wherever they came from, and that is part of the causation. But now you get into Huey. I mean, that's right. Without proof of this particular eagle or the group of eagles that the 63 feathers came from, you don't have restitution linked to the offense of conviction. We have restitution linked to the trafficking because certainly the parts of a bald eagle, one single juvenile bald eagle, four feathers, were trafficked. Without question. I can't tell you how the eagle died, but I can tell you that the four feathers from one eagle were trafficked. Even if you accept that theory, is there a problem with the full amount of the value of the eagle being assessed against each person who sells a feather from the eagle? Is that like a Paroline problem where the court said we can't tag each of the viewers with the full amount? It does. We have to reduce it and come up with some reasonable estimate. It does. Why wouldn't that be a problem here in giving the full amount? Because there could be another guy who sold four more feathers or two more feathers. That's true. Under this theory, everybody would pay the full amount of the bird. Which is not permissible under Paroline. That's true. It's a different statute, so I don't know if really we say under Paroline. But under that approach, it wouldn't be permissible. So why isn't that a reason to reduce this amount? The evidence was that the bald eagle that the government presented was worth $9,800. And so the court, I think, did incorporate a reduction into its restitution. It said it was a juvenile bald eagle and it relied on not only a report from our wildlife specialist but also the court's standing order, forfeiture order. But wasn't the judge thinking this was the full amount to replace the... Yeah. Alright, now you think the full amount is the proper order? In this case, I think it's commensurate with the crime. And I think that's the ultimate question that they were getting at in Paroline. What is the role of the defendant's conduct in commensurate with the loss? And a bald eagle cannot live without four tail feathers. And that's fine talk, not restitution talk. Well, no, it's restitution law. Paroline is restitution law. But, you know, you have to have a loss caused by the offense. And it has to be an economic loss. And... It has to be quantifiable economically anyway. Do you agree that it has to be an economic loss? And if not, why not? Well, I think if property loss is economic loss, there has to be... Well, yeah, the value of lost property is... But these cases like the fish cases, the Fourth Circuit case that's cited, was that an economic loss to the states, or was that... Yeah, I believe so. Yeah, in the lobster case, South Effort and lobsters. I'm not sure they were saying it was an economic loss to the state. The state didn't own the fish. It was a... I think they called it a proprietary... Proprietary. That's proprietary, pecuniary. Different words are thrown around, but in a sense, there is an ownership, at least in some sense, of a state in these wildlife. And that is compensable through restitution. And of course, in Paroline, it wasn't strictly economic either. It was mental anguish. But I think that was dependent on the specific statute at issue. I think this was a very reasonable, modest restitution order based on DNA, based on proof of trafficking that involved at least one dead juvenile eagle. And I think there's no... This was not an abuse of discretion in our view, Your Honor. And none of the factual findings by the court were clear error. We ask you affirm. Mr. Turner for rebuttal. Thank you. If there's a specific case you want to talk about, we can. I've got a couple points I'd like to make. First of all, one of the things that the court looked to was to determine, which is a fine schedule, but I would point out that that valuation table has list parts at $500, not the $5,000. So it has a separate amount for parts. Whether that means two wings, a full tail, a head, talons. That table was for fines, right? That seemed like... I was a little confused on what the sources were for the information. And it sounded like it was sort of rounded off fine numbers. It is a valuation table promulgated by Fish and Wildlife. It's not negotiated or... In your sense, is that what the district court relied on more? It almost seemed like you didn't get what the approach you wanted and the prosecutor was trying to present some evidence of the replacement value and the court kind of said, well, that replacement value that study corroborates this fine... Like relied on sort of what neither one of you... I think that's a real good point, which goes to the fact that what we're talking about here is not a replacement of a live eagle, but a replacement of feathers. But again, we don't have to replace the feathers because the government already has them. I made a note, your addendum too is the South Dakota bond schedule. That's... The government referred, or the trial court referred to the South Dakota collateral forfeiture schedule. Is that in the record on appeal? I believe it's the same thing. I didn't see anywhere in your addendum document anything setting value at $5,000 for a juvenile and $10,000 for... All it has is $5,000 and $10,000 and somebody had to testify that that's what that meant. I don't think that it should be used at all, frankly. We put it in the... I couldn't even find those numbers in... It's a... Parsing through that... It's a terribly confusing table. I put it in there so that... Because the court had mentioned it and I thought the court might want to see it. It's a standing order and the court used it as part of its basis. Quick note on Paroline before I run out of time. The majority opinion and both of the dissents cited to Huey and were very, very careful about delineating what restitution was for Paroline as opposed to the person who initially abused or took the pictures. Abused the child or took the pictures. It said, look, we can't order restitution for the original crime of creating the pornography or abusing the girl. We can only give restitution for the re-victimization or the crime of reviewing and distributing which has further damages to this little girl. Now a woman. That is exactly what Huey says and that's what we have here. There is... There may be. We don't know. There may have been a separate crime of killing an eagle for which replacement cost might be a restitution that could be argued. What we have here is trafficking in feathers. There's no proprietary interest that the government has. Bengus is the South Africa lobster cases. The court found that because South Africa could have taken those lobsters and sold them at market value that appropriate restitution was the market value of those lobsters. Same thing with Ocean Pro Limited which said that with respect to bass taken out of those waters for Maryland and Virginia those states could have seized those sold them and that's an appropriate amount of restitution. The government can seize the feathers. They already have. The amount that they're out of pocket, the amount of loss is $130 that the Fish and Wildlife paid. Thank you. Thank you, Counsel. Interesting case and quite unusual and I think your argument has been helpful and you briefed it well and we'll take it under guidance. Thank you. Does that complete the morning's argument? Yes, Your Honor. Very good. Will courts recess until 9 o'clock tomorrow morning?